# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JOHN CURRAN ) | Case No. 09-16065-SSM |
| ) | (Chapter 7) |
| Debtor ) | |
| ) | |
| ) | |
| RODERICK ROHRER ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Adversary Proceeding |
| ) | |
| JOHN CURRAN ) | No. _____ |
| 1342 Sundial Drive ) | |
| Reston, Virginia 20194 ) | |
| ) | |
| Defendant ) | |

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

COMES NOW, RODERICK ROHRER (hereinafter "Mr. Rohrer" or the "Plaintiff"), the Plaintiff herein, by his undersigned counsel, and pursuant to Section 523(a) of Title 11 of the United States Code (the "Bankruptcy Code"), and applicable Federal Rules of Bankruptcy Procedure and Local Rules, files his complaint objecting to the dischargeability of claims by Mr. Rohrer against John Curran (hereinafter the "Defendant" or the "Debtor"), the Debtor herein, stating to the Court as follows:

Raymond R. Pring, Jr., Va. Bar No. 39104
The Law Office of Raymond R. Pring, Jr.
9431 Main Street
Manassas, Virginia 20110
(703) 366-3920

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Roderick Rohrer is a resident of Virginia.

2. On information and belief, Defendant John Curran, a/k/a John R. Curran, Jr. is an individual with address of 1342 Sundial Drive, Reston, Virginia 20194.

3. On July 29, 2009 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code, thereby commencing the above captioned chapter 7 bankruptcy case.

4. This Court has jurisdiction over this adversary proceeding pursuant to the provisions of 28 U.S.C. § 157 and 1334(b) and 11 U.S.C. § 523.

5. This is a core proceeding.

6. Venue is proper in this Court under 28 U.S.C. § 1409(a) and Federal Rule of Bankruptcy Proceeding 5005.

## FACTS

7. Mr. Rohrer met the Debtor in December of 2005. The Debtor presented himself as a business professional with Horizon Data Corporation (hereinafter "Horizon").

8. At their first meeting, the Debtor told Mr. Rohrer that the Debtor was expecting to win a contract with the United States Navy for $3.2 billion, and as a result, was in need of instructional designers.

9. Within a week after their first meeting, Mr. Rohrer forwarded three resumes of instructional designers to the Debtor to assist the Debtor in his search for instructional designers.

10. The Debtor subsequently used Mr. Rohrer's work facility on multiple occasions to conduct interviews of the instructional designer candidates. On information and belief, the true

purpose of the interviews was to deceive Mr. Rohrer by creating the false impression regarding the Debtor's employment and professional status.

11. During all times relevant herein, much of the communications between Mr. Rohrer and the Debtor were in the form of emails either using a computer or smart phone device. The Debtor used the email address "curranj@horizondata.com" with respect to these communications, which on information and belief, was for the purposes of creating the impression that the Debtor was affiliated with Horizon.

12. The Debtor's emails also included "signatures" listing his contact information as a Horizon employee, including his purported position with Horizon. During the course of his communications with Mr. Rohrer, the Debtor consistently used the title of "Executive Vice President/COO, Horizon Data Corporation" and later, "President, Horizon Data Corporation" as signatures on the emails that he sent to Mr. Rohrer. The Debtor also produced an electronic non-disclosure agreement ("NDA") on Horizon letterhead which he produced and ratified in order to further represent his status as an officer of Horizon.

13. On January 10, 2006, after multiple requests from the Debtor, Mr. Rohrer agreed to lend the Debtor $30,000.00 to be used to purchase Horizon stock. The Debtor executed a promissory note payable to Mr. Rohrer for the $30,000.00 loan (the "Note"), the terms of which called for 2.5% of the Debtor's stock in Horizon to be transferred to Mr. Rohrer for each 30-day period that the Debtor was in default of repayment. Moreover, the Note provided that Mr. Rohrer was entitled to reasonable attorneys' fees in the event that a "case suit or action is instituted to collect this note, or any portion hereof . . .." A copy of the Note is attached hereto as **Exhibit A**.

14. The Debtor told Mr. Rohrer that he needed the loan proceeds in order to buy out Dave Walp, a 49% owner of Horizon. The Debtor further represented that he was missing $30,000.00 of the $1,000,000.00 that he needed to buy out Mr. Walp, and that he had either raised or supplied the remainder of the $1,000,000.00 that he needed to buy out Mr. Walp. On information and belief, the Debtor never purchased any stock in Horizon.

15. On January 13, 2006, the Debtor emailed Mr. Rohrer, using his Horizon email account address, claiming to have a $500,000,000.00 buyout offer from General Dynamics for Horizon.

16. On January 25, 2006, the Debtor emailed Mr. Rohrer, using his Horizon email account address, promising to repay the $30,000.00 loan and to make a $6.25 million payout to Mr. Rohrer when the United States Navy deal closed.

17. On January 31, 2006, the Debtor emailed Mr. Rohrer a letter that purported to be from the law firm of Patton Boggs LLP (hereinafter "Patton Boggs"). The letter discussed the terms of the General Dynamics buyout of Horizon, and confirmed the $500,000,000.00 figure that the Debtor had previously quoted to Mr. Rohrer. On information and belief, the Debtor forged this letter.

18. On February 2, 2006, the Debtor asked Mr. Rohrer for an emergency loan in the amount of approximately $29,000.00, in order to pay a bill for outstanding taxes and to avoid being imprisoned.

19. The next day, on February 3, 2006, at the Debtor's request, Mr. Rohrer wired the $29,000.00 to Mr. Larry Gately, a friend of the Debtor, so that the Debtor would not be jailed. On information and belief the Debtor had Mr. Gately drive to the bank where Mr. Rohrer wired the money and obtain a cashier's check, which Mr. Gately subsequently took to the Debtor.

20.     On February 4, 2009, the Debtor forwarded to Mr. Rohrer an email purporting to be from Jack Deschauer of Patton Boggs promising that Mr. Rohrer would receive his $6.25 million payment "tax free." On information and belief, the Debtor forged this email.

21.     On February 13, 2006, Mr. Rohrer invited the Debtor to join his company on a trip in March of 2006 in order to celebrate the anticipated March 3, 2006 closing of the General Dynamics/Horizon buyout deal.

22.     On February 16, 2006, the Debtor sent Mr. Rohrer an email asking Mr. Rohrer to wire a $10,000.00 loan to Mr. Jose R. Rivera ("Mr. Rivera") directly. Mr. Rivera was the CEO and purported 51% owner of Horizon. The Debtor stated that Mr. Rivera needed this loan so that Horizon could afford to meet its payroll obligations. Mr. Rohrer agreed to do so, and wired the $10,000.00 loan directly to Mr. Rivera's account. On information and belief, the loan proceeds were not used for the purpose stated by the Debtor.

23.     Two weeks later, the Debtor sent Mr. Rohrer an email claiming to be broke and asking Mr. Rohrer to "float" him money. Mr. Rohrer agreed to do so, and loaned the Debtor $900.00.

24.     On or about March 8, 2006 the Debtor sent an email to Mr. Rohrer suggesting that he had a $162,000,000.00 cashier's check in his possession. On information and belief, the Debtor sent this email to Mr. Rohrer in an effort to address Mr. Rohrer's concerns regarding the Debtor's ability to repay the loans that Mr. Rohrer had extended to the Debtor and to obtain further loans.

25.     Mr. Rohrer made numerous requests to the Debtor for repayment of the Note loan principal.

26. On March 12, 2006, the Debtor sent Mr. Rohrer an email promising a payment of $25,000,000.00. This amount represented 5% of the total amount of the purported $500,000,000.00 buyout offer that the Debtor claimed General Dynamics had made for Horizon. As of March 12, 2006, under the terms of the Note, the Debtor was obligated to repay Mr. Rohrer the $30,000.00 loan principal as well as 5% of the Debtor's purported stock in Horizon.

27. On or about March 14, 2006, the Debtor faxed a document to Smith Barney from Mr. Rohrer's office purporting to authorize the transfer of $25,000,000.00 to Mr. Rohrer.

28. Subsequently on March 15, 2006, the Debtor sent an email to Mr. Rohrer stating that his money was wired to Commerce Bank and not to Smith Barney.

29. On information and belief, on March 16, 2006, the Debtor's former office assistant – on behalf of and under the control and direction of the Debtor – impersonated a representative of Commerce Bank and purported to verify that the transfer of funds was in progress.

30. On or about March 16, 2006, the Debtor forwarded an email to Mr. Rohrer that purported to be from Lewis Von Thayer, the President of General Dynamics Advanced Information Systems, to the Debtor. The March 16, 2006 email stated that General Dynamics was committed to its transaction with Horizon.

31. On March 17, 2006, the Debtor informed Mr. Rohrer that the $25,000,000.00 wire may take 72 hours to post, and that the Debtor would be getting a loan from Commerce Bank for $3.5 million in the mean time.

32. On April 3, 2006, Mr. Rohrer received an email from the Debtor forwarding an email from Bill Collins, who identified himself to be the assistant to John Partridge of Monitor Real Estate Services, which contained a link to documents indicating that the Debtor was

pursuing a $70,000,000.00 loan.  On April 5, 2006 John Partridge sent an email to Mr. Rohrer stating that the Debtor was approved for a loan of $70,000,000.00 from Rapid Funding pending the receipt of one document and a $5,000.00 wire, and that the sale of Horizon was still in good standing.

33.    The Debtor subsequently made assurances to Mr. Rohrer that the Debtor was closing his deal with Rapid Funding to obtain the $70,000,000.00 loan.

34.    On April 17, 2006, two weeks later, the Debtor sent Mr. Rohrer an email confirming that Rapid Funding had provided the $70,000,000.00 loan.

35.    Mr. Rohrer later learned that the Debtor's assurances that he had received the $70,000,000.00 loan from Rapid Funding were untrue.

36.    On April 21, 2006, the Debtor emailed two documents to Mr. Rohrer.  The first document received by Mr. Rohrer from the Debtor was An Assignment to Funds, in which the Debtor purported to assign $90,000,000.00 to be paid to Rapid Funding to satisfy the $70,000,000.00 loan plus interest.  Mr. Rohrer also received a letter purporting to be from Patton Boggs attesting to the pending sale of Horizon.  Both documents represented that Horizon was the Debtor's company.  On information and belief, both documents were false, and the Patton Boggs letter was forged by the Debtor.

37.    On April 26, 2006, Mr. Rohrer loaned the Debtor $200.00 so that the Debtor could take his 18 year old daughter out to celebrate her birthday.  Mr. Rohrer later learned that several other people attended the birthday dinner and that others contributed to the cost of the dinner.

38.    On May 3, 2006, the Debtor sent an email to Mr. Rohrer suggesting that General Dynamics wanted to meet with the Debtor to close its deal to purchase Horizon.

39. On May 6, 2006, Mr. Rohrer loaned the Debtor an additional $100.00 to pay for gas, which the Debtor claimed that he needed in order to pick up his sick daughter from school that day. Mr. Rohrer later learned that the Debtor's daughter had not been sick on that day.

40. On June 1, 2006, the Debtor presented Mr. Rohrer with a letter, signed by Mr. Rivera, enclosing an agreement for the Debtor to buy out Mr. Rivera's 51% stake in Horizon for $2,500,000.00 on or before June 9, 2006.

41. After receiving no further information about the purported Rivera stock buyout, Mr. Rohrer contacted Mr. Rivera and demanded repayment of the $10,000.00 loan. Thereafter, on June 20, 2006, Mr. Rohrer received an email from Mr. Rivera in which Mr. Rivera disavowed any knowledge that the $10,000.00 loan was from Mr. Rohrer.

42. In June of 2006, Mr. Rohrer met with Mr. Rivera regarding the Debtor's association with Horizon and the Debtor's representations to Mr. Rohrer. During that meeting, Mr. Rivera admitted that the Debtor was neither an employee nor an owner of Horizon during the period in which he represented himself as such to Mr. Rohrer.

43. Despite numerous subsequent attempts, Mr. Rohrer did not receive any payment from the Debtor or any other source with respect to Mr. Rohrer's loans to the Debtor.

44. On May 8, 2007, Mr. Rohrer commenced a lawsuit in the Circuit Court for Fairfax County, styled *Roderick Rohrer v. John R. Curran, Jr., Jose R. Rivera, and Horizon Data Corporation*, Civil Case No. CL 2007 5455 (the "Fairfax County Lawsuit").

45. In the Fairfax County Lawsuit, Mr. Rohrer asserted of Fraud, Breach of Contract, Unjust Enrichment and Common Law Conspiracy to Commit Fraud against the Debtor.

46. On May 2, 2008, just prior to trial in the Fairfax County Lawsuit, Mr. Rohrer and the Debtor reached agreement on a settlement to resolve the pending lawsuit. Under the terms of

the settlement agreement entered into by Mr. Rohrer and the Debtor (the "Settlement Agreement"), the Debtor agreed to pay Mr. Rohrer the sum of $140,000.00 plus interest at a rate of 8% annually from May 1, 2008. Pursuant to the Settlement Agreement, the parties executed and filed a consent order dismissing the Fairfax County Lawsuit.

47.    The Debtor failed to make any of the payments to Mr. Rohrer as required in the Settlement Agreement.

48.    In accordance with the terms of the Settlement Agreement, on October 1, 2008, Mr. Rohrer, as attorney-in-fact for the Debtor, filed a Confession of Judgment against the Debtor in the Circuit Court for Fairfax County. A copy of the Confession of Judgment is attached hereto as **Exhibit B**.

49.    Subsequent to entry of the Confession of Judgment, Mr. Rohrer has not received any payment from or on behalf of the Debtor.

50.    Mr. Rohrer incurred substantial attorneys' fees in collecting the Note as reflected in the payment amount required by the Settlement Agreement.

51.    In his schedule of Creditors Holding Unsecured Nonpriority Claims, filed in his bankruptcy case under penalty of perjury, the Debtor listed Mr. Rohrer has having a claim in the amount of $150,000.00. The Debtor failed to properly list Mr. Rohrer's address, resulting in Mr. Rohrer not receiving timely notice of the Debtor's bankruptcy filing.

52.    Mr. Rohrer was contacted by representatives of the Federal Bureau of Investigation (the "FBI") regarding the Debtor's pre-petition conduct, and was interviewed by the FBI. On information and belief, on or about November 16, 2009, the Grand Jurors of the Commonwealth of Virginia for the County of Fairfax handed down three criminal indictments against the Debtor for obtaining money under false pretense, naming Mr. Rohrer as the victim of

the Debtor's actions to "obtain by false pretense or token, with intent to defraud, good and lawful currency of the United States in excess of $200.00 . . .." Copies of the indictments are attached hereto as **Exhibit C**, **Exhibit D** and **Exhibit E**.

## COUNT I
## (FRAUD UNDER 11 U.S.C. § 523(a)(2)(A))

53. Paragraphs 1 through 52 above are hereby repeated and incorporated as if fully set forth herein.

54. At all times relevant herein, the Debtor falsely represented himself to Mr. Rohrer as the Executive Vice-President/COO, and later the President of Horizon. In furtherance of these false representations, the Debtor used fraudulent and misleading business cards and an email address that identified him as an officer of Horizon.

55. In December of 2005 the Debtor represented to Mr. Rohrer that the Debtor was negotiating and expected to win a contract with the United States Navy for $3.2 billion through Horizon. On information and belief, the Debtor was not in negotiations to win any contract with the United States Navy and his representations were false.

56. In December of 2005 and January 2006, the Debtor falsely represented to Mr. Rohrer that he had raised or supplied all of the $1,000,000.00 purchase price for Mr. Walp's 49% ownership of Horizon except for $30,000.00 that he wanted to borrow from Mr. Rohrer. On information and belief the Debtor had not already raised or supplied the remainder of the purported $1,000,000.00 purchase price for Mr. Walp's 49% interest in Horizon and the Debtor did not purchase stock in Horizon with the $30,000.00 loan proceeds.

57. In December 2005 and January 2006, the Debtor falsely and intentionally misrepresented that he needed to borrow $30,000.00 from Mr. Rohrer to purchase stock in Horizon. On information and belief, despite receiving the $30,000.00 loan, and despite agreeing

10

to transfer a portion of the stock as a repayment term under the related Note, the Debtor never purchased any Horizon stock.

58. On January 13, 2006, the Debtor emailed Mr. Rohrer, using his Horizon email account address, falsely representing that General Dynamics had made him an offer to buy out Horizon for $500,000,000.00. To support this false representation, the Debtor presented Mr. Rohrer with documents and communications, including documents and communications purporting to be from Patton Boggs, confirming various details of the purported buyout offer by General Dynamics. On information and belief, these documents were false and some or all of the documents were forged by the Debtor for the purpose of perpetrating his fraudulent actions.

59. On April 3, 2006, the Debtor sent an email to Mr. Rohrer from Bill Collins, who identified himself as the assistant to John Partridge of Monitor Real Estate Services, which contained a link to documents indicating that the Debtor was pursuing a $70,000,000.00 loan. Subsequently, on April 5, 2006, Mr. Rohrer received an email from John Partridge of Monitor Real Estate Services, Inc. stating that the Debtor had been approved for a $70,000,000.00 loan from Rapid Funding, pending the receipt of one document and a $5,000.00 wire, and that the sale of Horizon was still in good standing. The Debtor thereafter made assurances to Mr. Rohrer that he was closing his deal with Rapid Funding to obtain the $70,000,000.00 loan.

60. On April 17, 2006, the Debtor sent Mr. Rohrer an email falsely stating that Rapid Funding had provided the $70,000,000.00 loan.

61. On April 21, 2006, the Debtor emailed Mr. Rohrer a document in which the Debtor purported to assign $90,000,000.00 to be paid to Rapid Funding to satisfy the $70,000,000.00 loan plus interest, and a letter purportedly from Patton Boggs attesting to the sale

11

of Horizon. Both documents were fraudulent and were provided by the Debtor in support of and in furtherance of his fraud upon Mr. Rohrer.

62. The Debtor misrepresented, omitted or concealed from Mr. Rohrer the true nature of his employment, business and professional contacts and his intentions and actions regarding a purported purchase of stock in Horizon.

63. The Debtor intentionally misrepresented the true nature of the purpose and use of the funds that he was seeking to borrow from Mr. Rohrer, including, without limitation, the $30,000.00 loan on January 10, 2006, the $29,000.00 loan on February 2, 2006 and the $$10,000.00 loan on February 16, 2006.

64. The Debtor made the misrepresentations, omissions, or concealments set forth herein for the purpose of inducing Mr. Rohrer into entering into business agreements with him from which he derived substantial economic benefits, including, without limitation, Mr. Rohrer's agreement to lend money to or for the benefit of the Debtor on January 2, 2006 ($30,000.00), on February 2, 2006 ($29,000.00) and on February 16, 2006 ($10,000.00), and to cause Mr. Rohrer to refrain from collecting such sums.

65. Mr. Rohrer has been damaged by the Debtor's actions in an amount to be determined at trial but including, without limitation, the $30,000.00 that Mr. Rohrer transferred to the Debtor under the Note for the purpose of purchasing Horizon stock, the stock in Horizon to be transferred to Mr. Rohrer under the terms of the Note or its monetary equivalent, the $29,000.00 paid to the Debtor through an intermediary on or about February 3, 2006 with which the Debtor was to pay taxes, the $10,000.00 paid to Mr. Rivera at request of and for the benefit of the Debtor on or about February 16, 2006, all other monetary loans by Mr. Rohrer to the Debtor, and attorneys fees expended in collecting on the Note.

66. Mr. Rohrer justifiably relied upon the Debtor's misrepresentations, omissions or concealments about the Debtor, his business affiliation and his potential business contacts, falsified documents and the stated purposes for requested loans in acting or refraining from acting and by loaning the Debtor money and entering into agreements and arrangements with the Debtor.

67. For the reasons set forth above, the Debtor's obligation to Mr. Rohrer is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, Roderick Rohrer respectfully seeks entry of an order by this Court: (i) determining that the Debtor's obligation to Mr. Rohrer in the amount of $153,999.99, or such other amount as determined by the Court, is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) including, without limitation, the $30,000.00 loan on January 2, 2006, the $29,000.00 loan on February 2, 2006, the $10,000.00 loan on February 16, 2006, and attorneys fees incurred in collecting on the Note; and (ii) granting such other and further relief as the Court deems just and appropriate.

## COUNT II
### (FALSE FINANCIAL STATEMENT UNDER 11 U.S.C. § 523(a)(2)(B))

68. The allegations set forth in paragraphs 1. to 67., hereinabove, are incorporated as if fully restated herein.

69. At all times relevant herein, the Debtor falsely represented himself to Mr. Rohrer as the Executive Vice-President/COO, and later the President of Horizon. In furtherance of these false representations, the Debtor used fraudulent and misleading business cards and an email address and other writings that identified him as an officer of Horizon.

70. In December of 2005 the Debtor represented to Mr. Rohrer that the Debtor was expecting to win a contract with the United States Navy for $3.2 billion through Horizon. On

information and belief, the Debtor was not in negotiations to win any contract with the United States Navy, and his representations were false.

71.  In December of 2005 and January 2006, the Debtor falsely represented to Mr. Rohrer that he had raised or supplied the entire $1,000,000.00 purchase price for Mr. Walp's 49% ownership of Horizon except for $30,000.00 that he wanted to borrow from Mr. Rohrer. On information and belief the Debtor had not already raised or supplied the remainder of the purported $1,000,000.00 purchase price for Mr. Walp's 49% interest in Horizon, thereby misrepresenting his financial condition.

72.  On January 13, 2006, the Debtor emailed Mr. Rohrer, using his Horizon email account address, falsely representing that General Dynamics had made him an offer to buy out Horizon for $500,000,000.00. To support this false representation, the Debtor presented Mr. Rohrer with documents and communications, including documents and communications purporting to be from Patton Boggs, confirming various details of the purported buyout offer by General Dynamics. On information and belief, these documents were false and some or all of the documents were forged by the Debtor for the purpose of perpetrating his fraudulent actions.

73.  On April 3, 2006, the Debtor sent an email to Mr. Rohrer from Bill Collins, who identified himself as the assistant to John Partridge of Monitor Real Estate Services, which contained a link to documents indicating that the Debtor was pursuing a $70,000,000.00 loan. Subsequently, on April 5, 2006, Mr. Rohrer received an email from John Partridge of Monitor Real Estate Services, Inc. stating that the Debtor had been approved for a $70,000,000.00 loan from Rapid Funding, pending the receipt of one document and a $5,000.00 wire, and that the sale of Horizon was still in good standing. The Debtor thereafter made assurances to Mr. Rohrer that he was closing his deal with Rapid Funding to obtain the $70,000,000.00 loan.

74. On April 17, 2006, the Debtor sent Mr. Rohrer an email falsely stating that Rapid Funding had provided the $70,000,000.00 loan.

75. On April 21, 2006, the Debtor emailed Mr. Rohrer a document in which the Debtor purported to assign $90,000,000.00 to be paid to Rapid Funding to satisfy the $70,000,000.00 loan plus interest, and a letter purportedly from Patton Boggs attesting to the sale of Horizon. Both documents were fraudulent and were provided by the Debtor in support of and in furtherance of his fraud upon Mr. Rohrer.

76. The Debtor intentionally misrepresented to Mr. Rohrer the true nature of his financial condition through writings and documents provided by the Debtor to Mr. Rohrer that were materially false.

77. The Debtor made the written misrepresentations regarding his financial condition set forth herein for the purpose of inducing Mr. Rohrer into entering into business agreements with him from which he derived substantial economic benefits, including, without limitation, Mr. Rohrer's agreement to lend money to or for the benefit of the Debtor on January 10, 2006 ($30,000.00), on February 2, 2006 ($29,000.00) and on February 16, 2006 ($10,000.00), and to cause Mr. Rohrer to refrain from collecting such sums.

78. Mr. Rohrer has been damaged by the Debtor's actions in an amount to be determined at trial but including, without limitation, the $30,000.00 that Mr. Rohrer transferred to the Debtor under the Note, the stock in Horizon to be transferred to Mr. Rohrer under the terms of the Note or its monetary equivalent, the $29,000.00 paid to the Debtor through an intermediary on or about February 3, 2006, the $10,000.00 paid to Mr. Rivera for the benefit of the Debtor on or about February 16, 2006, all other monetary loans by Mr. Rohrer to the Debtor, and attorneys fees expended in collecting on the Note.

79.    Mr. Rohrer reasonably relied upon the Debtor's written misrepresentations regarding the Debtor's financial condition in acting or refraining from acting and by loaning the Debtor money and entering into agreements and arrangements with the Debtor.

80.    For the reasons set forth above, the Debtor's obligation to Mr. Rohrer is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

WHEREFORE, Roderick Rohrer respectfully seeks entry of an order by this Court: (i) determining that the Debtor's obligation to Mr. Rohrer in the amount of $153,999.00 is non-dischargeable under 11 U.S.C. § 523(a)(2)(B) including, without limitation, the $30,000.00 loan on January 2, 2006, the $29,000.00 loan on February 2, 2006, the $10,000.00 loan on February 16, 2006, and attorneys fees incurred in collecting on the Note; and (ii) granting such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

RODERICK ROHRER

By: /s/ Raymond R. Pring, Jr._____
Raymond R. Pring, Jr., Va. Bar No. 39104
THE LAW OFFICE OF RAYMOND R. PRING, JR.
9431 Main Street
Manassas, Virginia  20110
(703) 366-3920
(703) 842-8212 (fax)
*Counsel to Roderick Rohrer*